IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHARELL HOLLOMAN, as natural mother and next of friend for minor, JANE DOE<br><br>Plaintiff,<br><br>vs.<br><br>UNIFIED SCHOOL DISTRICT 259,<br><br>Defendant. | Case No. 05-1180-JTM |

### MEMORANDUM AND ORDER

This matter comes before the court on the defendant's Motion for Summary Judgment (Dkt. No. 35). Defendant argues that plaintiff fails to establish facts entitling her to relief under 42 U.S.C. § 1983. Specifically, defendant argues that plaintiff fails to set forth facts sufficient to establish a constitutional violation for either a procedural due process or a substantive due process claim. Without a federal claim, defendant urges the court to dismiss plaintiff's remaining state law claims. Plaintiff responds that she states both procedural and substantive due process claims, permitting her to proceed with her action. After reviewing the parties' arguments, the court finds in favor of defendant.

### I. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c). In

considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. Dayton Hudson Corp. v. Macerich Real Estate Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in Matsushita). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## II. FINDINGS OF FACT

### A. Background

Plaintiff's daughter, who will be referred to as A.H., does not have physical or mental handicaps, but has behavior problems that resulted in her needing special education classes. A.H. told Juvenile Detention employees that both her mother and one of her mother's boyfriends have physically abused her. A.H. later testified in her deposition that she lied about anything she said bad about her

mom and her mom's boyfriend. A.H. has repeatedly been in trouble at school for being tardy, for using foul and vulgar language in front of other students, for engaging in physical fights with other students and physically fighting with teachers. A.H. admits to provoking others with words when recounting her prior fist fights in school.

On December 6, 2002, at Marshall Middle School (over a year before the slapping incident), A.H. threatened to kick one of her teachers (Ms. Wilcox), who was six-months pregnant, so as to kill her unborn child. As a result of that threat, A.H. was transferred to Hadley Middle School. A.H. had excessive unexcused absences from Hadley Middle School and transferred from Hadley to Wilbur Middle School.

While at Wilbur Middle School, A.H. was given numerous demerit slips for inappropriate behavior. In December 2003, A.H. hit her teacher (Mr. Cummings) with her hand. She also slammed a classroom door on a teacher's arm. In January 2004, A.H. was a 13-year-old, 7th grade student at Wilbur Middle School in Wichita, Kansas. One of the teachers, Ms. Martha Hopper, had A.H. in her fourth-hour geography class.

Plaintiff, plaintiff's daughter, and USD 259 have no knowledge of anything prior to the subject incident that would lead them to believe the teacher would slap plaintiff's daughter or another student.

**B. Ms. Hopper's Account of the Incident at School**

Although plaintiff objects to the description of events, internal school documents reflect that Ms. Hopper described the events as follows.

On January 8, 2004, A.H. walked into the classroom eating a large sucker. When the bell rang, Ms. Hopper asked her to get rid of the sucker. A.H. said, "No." The teacher wrote out a demerit

3

slip and gave it to her. While the teacher was taking attendance, A.H. began arguing with two other students. Ms. Hopper could see that the argument was escalating, and she told A.H. to move to a different chair. The teacher went to assist A.H. in moving her book and folder to a location near the teacher's desk and away from the other students. A.H. grabbed the book away. Ms. Hopper carried A.H.'s folder to the desired location, and A.H. very slowly followed her back while talking, cussing, and arguing.

Ms. Hopper stood by A.H.'s newly designated chair. A.H. then sat in the chair, cussing and arguing, and turned the chair completely around towards the entire class. Ms. Hopper reacted by slapping A.H. on her cheek. A.H. immediately stood up and put her face in the teacher's face (about two or three inches away) and yelled repeatedly, "You can't tell me what to do!" The teacher told her that they needed to go to the office. A male student proctor came into the classroom for another student. Ms. Hopper asked the proctor to escort A.H. to the school office. Ms. Hopper placed her hand on one of A.H.'s shoulders to turn her in the proctor's direction. In response, A.H. tightly grabbed the teacher's wrist to pull her hand off her shoulder. A.H. then twisted Ms. Hopper's wrist, telling her, "Keep your hands off of me." A.H. denies that she did anything to provoke Ms. Hopper.

### C. Plaintiff's Additional Testimony about the Incident

A.H. testified that Ms. Hopper slapped her when it appeared that she was not moving fast enough and asked A.H. after the slap if she would like Ms. Hopper to do it again. A.H. testified that Mr. R.W. Wright, the assistant school principal, initially represented to her that Ms. Hopper was saying that the incident did not happen. Mr. Wright later found out the incident did take place. He did not initially call A.H.'s mother, but when he did and A.H.'s mother represented she would be coming to the

school, he told her that Ms. Hopper would be leaving and would not even be on school grounds. Ms. Hopper never left the school grounds.

A.H. was suspended and asked to clean out her locker even though she was the person slapped. A.H. testified that while she was cleaning out her locker, Ms. Hopper walked by and laughed at A.H. as if the incident was "funny".

A.H. testified that after A.H. was slapped, she grabbed Ms. Hopper's arm to defend herself. She claims that at no time did she twist Ms. Hopper's arm. A.H. said that as a result of the slap, she feels like an outcast and no longer wants to participate in class anymore. She feels like, in a way, Ms. Hopper has control of her life.

**D. School Action**

A.H. was given an ice-pack to reduce the swelling. A.H. and the plaintiff testified that A.H.'s cheek was red from the slap. A.H. recovered from the slap without any problems by the following morning. The plaintiff admits that A.H. did not seek or need to seek any medical treatment because of the slap.

School Principal Cherie Crain phoned the student's mother during the afternoon of the January 8, 2004 incident to advise her of the incident. The same day of the incident, Principal Crain began an investigation and notified Ms. Hopper that she was required to appear for a meeting the next afternoon.

A.H.'s mother came to school the following morning and had a conference with the principal, Ms. Hopper, and her daughter in attendance to discuss what had happened. A.H. was immediately and permanently removed from Ms. Hopper's classroom.

Ms. Hopper appeared for a meeting the next afternoon with representation from the teacher's

union. The teacher admitted that she had slapped the student. The school principal advised Ms. Hopper that, no matter how provoked, any assault by a teacher upon a student is totally inappropriate and can never happen again.  Ms. Hopper was informed that, should anything of this nature occur in the future, further disciplinary action could occur, up to and including termination of her employment with the school district.  A written reprimand contained in a Personnel Conference Summary form was placed in the teacher's personnel file.

On March 19, 2004, the Wichita School District advised Ms. Hopper, in writing, that her contract as a classroom teacher for USD 259 would not be renewed for the coming school year (2004-2005). Ms. Hopper is no longer employed as a classroom teacher by USD 259.

**E. The Following School Year**

On September 22, 2004, A.H. cursed, cussed and assaulted another student. She also stated that a teacher (Mr. Mucciaccio) "needs to quit lying before he gets hurt."  On October 1, 2004, A.H. incited a disturbance at Wilbur in the foyer and on the playground after lunch. She also yelled and cursed at a school administrator.  For that, she was arrested for disorderly conduct and taken to the Sedgwick County Juvenile Intake and Assessment Center.

Plaintiff and her mother claim that the one-time slap negatively affected A.H.'s life and the life of her whole family.  A.H. states that she no longer trusts teachers or tries to build a friendship with her teachers.  Instead, if she needs help, she raises her hand, but she does not consider teachers as her friends.

**F. Follow-up with the School**

Sharell Holloman spoke to a representative from the school on January 8, 2006. At that time

Ms. Holloman wanted to come to the school, but Ms. Holloman was told that Ms. Hopper was already gone. Ms. Holloman was not invited to come to the school the next day. Ms. Holloman was not advised that there would be a "disciplinary meeting" with Ms. Hopper at 1 p.m. that same day she was meeting with the principal and teachers.

USD 259 never informed Ms. Holloman about any follow-up investigation or discipline of Ms. Hopper. Ms. Holloman does not have any recollection of receiving the letter from the school dated January 8, 2004 (Defense Exhibit DID 104). Ms. Holloman challenges the authenticity of this document because it was not written on USD 259 official letterhead, was not discussed with Ms. Holloman, was only signed by the principal, and was not produced until her deposition on February 8, 2006. Additionally, it was not officially represented to Ms. Holloman that Ms. Hopper's contract was not renewed until Ms. Holloman's deposition was taken on February 8, 2006.

Ms. Holloman did not see any of the documents or references made to the discipline of Ms. Hopper. She was not notified about any discipline or a failure to renew Ms. Hopper's contract. Ms. Holloman felt she was not treated properly in terms of how the district dealt with the whole slapping incident.

The district clearly stated that slapping will not be condoned.

## III. ANALYSIS

Defendant removed this action from Sedgwick County State Court. The amended complaint raises three grounds for relief. In count one, plaintiff alleges assault and battery in violation of 42 U.S.C. §1983. In counts two and three, plaintiff alleges that the school district breached its duty to plaintiff's daughter. Defendant now challenges the factual and legal assertions upon which plaintiff

brings her claim.

> Title 42 U.S.C. § 1983 states:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983(a). Courts have permitted students to bring corporal punishment claims as both procedural and substantive due process violations. See Garcia by Carica v. Miera, 817 F.2d 650, 653-54 (10th Cir. 1987). Typically, parties frame their corporal punishment claims in terms of violation of specific constitutional rights. See Nicol v. Auburn-Washburn USD 437, 231 F. Supp.2d 1107 (D. Kan. 2002) (framing plaintiff's § 1983 claim of excessive force as a violation of her right under the Fourth Amendment right to be free from unreasonable seizure and a violation of her right under the Fourteenth Amendment to substantive due process); Gonzales v. Passino, 222 F. Supp.2d 1277 (D. N.M. 2002) (analyzing a student's potential due process claim under the Fourteenth Amendment rather than an excessive force claim under the Fourth Amendment). Here, plaintiff states only state common law claims as the basis of her § 1983 action.

**A. Procedural Due Process**

For a student alleging corporal punishment to prevail in a procedural due process claim pursuant to § 1983, the student must satisfy a two-prong test. First, the court considers whether the individual possessed a protected interest to which due process protection was applicable. Hennigh v. City of Shawnee, 166 F.3d 1249 (10th Cir. 1998). Second, the court considers whether the individual

was afforded the appropriate level of process.  Id..

Here, plaintiff claims a protected interest in her continued education.  Plaintiff claims that but for Ms. Hopper's actions, A.H. would not be subject to a suspension and transfer. Second, plaintiff claims that A.H. and her mother were not afforded an appropriate level of process. Defendant does not dispute the offensiveness of the contact for the purposes of this motion. However, defendant notes that the pretrial order fails to assert a procedural due process claim.  In particular, plaintiff fails to seek a suitable post-deprivation remedy.

As a preliminary matter, the court notes a number of deficiencies in plaintiff's theory of recovery as set forth in the pretrial order.  The relevant count provides:

> 1) That the plaintiff's daughter was struck, or an offensive contact was made by Ms. Hopkins.
>     A) For the 42 USC 1983 claim to survive, the plaintiff must show that the defendants in this matter are state actors and during all relevant time periods herein were acting under the color of state law.

Pretrial Order, at p. 11.  There is no mention of a procedural due process claim or defendant's failure to provide a suitable post-deprivation remedy to plaintiff.  Plaintiff has not moved for an amendment of the pretrial order.  Thus, on its face, the pretrial order limits plaintiff's ability to proceed with her action. See Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1304 (10th Cir. 2003) (noting that an "order entered pursuant to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation.").

Even if the pretrial order were amended, plaintiff fails to state a claim that survives summary judgment.  In her response, plaintiff claims a property interest in her continued education, alleging that her suspension and transfer interfered with her property interest.  However, the facts do not entirely support plaintiff's claim.  Plaintiff was subject to an in-school suspension where she was allowed to

continue working on her lessons. Her ability to continue her education erodes her claim that she was denied a property interest in her education. Furthermore, A.H.'s transfer was not the direct result of the incident with Ms. Hopper. Rather, A.H. requested a transfer later in the year. The facts indicate that she attended Wilbur at least until fall 2004, at least eight or nine months after the incident with Ms. Hopper.

The next issue is whether plaintiff was afforded the appropriate level of process. Again, although plaintiff claims in her response that she was not afforded adequate process, the pretrial order does not include such allegations. Youren, 343 F.3d at 1304. Even if plaintiff were allowed to proceed, the court finds adequate process. Ms. Holloman and A.H. met with the principal following the incident. There is no evidence that plaintiff, as guardian, opposed the suspension. At all times, A.H. was able to do her classwork, though not in the classroom. The court finds no procedural due process violation based on this limited absence from class, before which the principal met with plaintiff.

Finally, as part of her procedural due process claim, plaintiff claims she should have been told what disciplinary measures had been taken against Ms. Hopper. While the school may have chosen to provide this information if its internal procedures permitted, plaintiff does not have a property interest in knowing the ultimate action taken against Ms. Hopper. Plaintiff cites no authority for this type of property interest. Plaintiff's property interest is limited to A.H.'s education.

**B. Substantive Due Process**

Substantive due process claims relating to corporal punishment may be brought under either the Fourth Amendment or the Fourteenth Amendment. In this case, plaintiff's pretrial order does not state the constitutional ground upon which her claim is brought. Claims of excessive force brought under the

10

Fourth Amendment are analyzed under the objective reasonableness standard.  <u>Gonzales</u>, 222 F. Supp.2d at 1279-80 (citations omitted).  However, claims of substantive due process brought under the Fourteenth Amendment are analyzed under the "shock the conscience" standard.  <u>Id.</u> at 1279.  <u>See id.</u> at 1280 (noting that the Tenth Circuit, as most circuits, analyzes claims of excessive force brought to discipline a school child under the Fourteenth Amendment); <u>Garcia v. Miera</u>, 817 F.2d 650, 653-54 (10th Cir. 1987).  <u>But see</u> <u>Nicol</u>, 231 F. Supp. 2d at 117 (permitting a claim under the Fourth Amendment against school personnel).

      Plaintiff's response argues for a substantive due process claim under the Fourteenth Amendment, despite the lack of specification in the pretrial order.  To determine whether there is a violation of substantive due process, the court inquires "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."  <u>Garcia</u>, 817 F.2d at 655 (quoting <u>Hall v. Tawney</u>, 621 F.2d 607, 613 (4th Cir. 1980)). To satisfy the "shock the conscience" standard, the plaintiff must demonstrate "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  <u>Uhlrig v. Harder</u>, 64 F.3d 567, 574 (10th Cir. 1995).  <u>See, e.g.</u>, <u>Garcia</u>, 817 F.2d at 652-53. (finding a substantive due process violation where a principal paddled a nine-year-old girl upside down with a split paddle, bloodying the girl's clothing and leaving a permanent scar). <u>Gerks v. Deathe</u>, 832 F. Supp. 1450 (W.D.Okla. 1993) (finding a violation of a student's substantive due process rights where a teacher left a mentally-handicapped child, who had a documented and known fear of being alone in a bathroom, to clean the bathroom alone for two hours).  <u>But see</u> <u>Harris v.</u>

Robinson, 273 F.3d 927, 930 (10th Cir. 2001) (affording a teacher qualified immunity where there was no violation of a clearly established constitutional or statutory right).

Plaintiff argues that she states a substantive due process claim based on Ms. Hopper's slapping of A.H. Defendant admits that Ms. Hopper slapped A.H., and this conduct was offensive. If this claim were allowed to proceed despite deficiencies in the pretrial order, plaintiff's claim cannot survive summary judgment. As compared to the precedent in this Circuit, this is not conduct that shocks the conscience. There is no evidence that the conduct was inspired by malice or sadism. Rather, this appears to be a incident where a teacher exerted an unwise level of force that was inappropriate and regrettable. A single slap from a teacher that left no scars and required no medical attention does not amount to a substantive due process claim.

**C. Common Law Claims**

Since plaintiff fails to present federal claims, this court will also dismiss without prejudice plaintiff's remaining common law claims. The court declines to exercise supplemental jurisdiction over the state claims. See Tonkovich v. Kansas Bd. of Regents, 254 F.3d 941, 945 (10th Cir. 2001) (stating that under 28 U.S.C. § 1367, a district court has discretion to dismiss supplemental state law claims where it has dismissed all federal claims, leaving only state issues).

IT IS ACCORDINGLY ORDERED this 15th day of June 2006, that the court grants defendant's Motion for Summary Judgment (Dkt. No. 35).

    s/ J. Thomas Marten
    J. THOMAS MARTEN, JUDGE